IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYAN KNUTSON, ) | CASE NO. 4:12-CV-3167 |
| ) | |
| Plaintiff, ) | |
| ) | **AMENDED** |
| v. ) | **COMPLAINT** |
| ) | |
| FIDELITY NATIONAL MANAGEMENT ) | |
| SERVICES, LLC, doing business in ) | |
| Nebraska as FNMS, LLC, ) | |
| ) | |
| Defendant. ) | |

**NATURE OF THE ACTION**

1. This is an action under Title I of the Americans with Disabilities Act of 1990, hereinafter ("ADA"), 42 U.S.C. § 12101 *et seq.*, as amended, with remedies arising from all violations under Title I of the ADA; the Nebraska Fair Employment Practice Act, hereinafter ("NFEPA"), Neb. Rev. Stat. § 48-1101 *et seq.* (Reissue 2010); and the Family Medical Leave Act, hereinafter ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and all remedies provided under said Acts.

2. Ryan Knutson hereinafter ("Plaintiff") alleges that the Defendant, Fidelity National Management Services, L.L.C., doing business in Nebraska as FNMS, LLC hereinafter ("Defendant"), through its employees and agents, discriminated against the Plaintiff, a qualified individual with a disability, within the meaning of Title I of the ADA, 42 U.S.C. § 12111(8), by: denying the Plaintiff an opportunity to return to his previous position after being on employer approved leave for short term disability, 42 U.S.C. § 12112 (b)(3)(A); limiting, segregating, and classifying him in a way that adversely affected his

opportunities and status because of his disability, 42 U.S.C. § 12112 (b)(1); interfering with and denying Plaintiff his right to take FMLA leave and violating his rights to return to his previous position as required by the FMLA, 29 U.S.C. § 2615; denying Plaintiff reasonable accommodations for his disability, 42 U.S.C. § 12112(b)(5)(A) & (B); engaging in unlawful retaliatory actions against him, 42 U.S.C. § 12203; and by breaching Plaintiff's confidentiality regarding his medical condition in violation of the ADA and FMLA.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, and 1343. This section is authorized and instituted pursuant to the ADA, 42 U.S.C. § 12117(a), which incorporates by reference, Sections 706(f)(1) and (3) if Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3)("Title VII"), pursuant to Section 102 of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a, and the NFEPA; pursuant to pendent jurisdiction.

4. The unlawful employment practices alleged below were committed within the jurisdiction of the District of Nebraska.

## PARTIES

5. Plaintiff is a resident of the State of Nebraska and a citizen of the United States and at all relevant times was an employee of the Defendant.

6. At all relevant times, the Defendant has continuously been and is now a corporation doing business in the State of Nebraska and has continuously had and currently has at least fifty (50) employees.

7. At all relevant times, Defendant has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e- (b), (g), and (h).

8. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## FACTS

9. On March 16, 2009, the Plaintiff was hired as an attorney to work for the Defendant as a Recoupment Counsel. In this position, the Plaintiff often worked seven days a week, frequently averaging ten to twelve hour days.

10. On December 29, 2009, the Plaintiff took a break from work in order to go to the hospital to help comfort his infant son who was being treated for a serious medical health condition. On his return to work from the hospital, the Plaintiff had a psychological breakdown.

11. On December 31, 2009, the Plaintiff provided a doctor's note to the Defendant and requested an unpaid leave of absence to address his medical condition. At that time the Defendant gave the Plaintiff a 30 day leave.

12. On January 14, 2010, the Plaintiff applied for a short term disability benefit offered through the Defendant's Employee Benefit Program. Said disability benefits were granted up to March 22, 2010. During the leave period, Plaintiff maintained contact with the Defendant and provided additional records explaining the need to be on medical leave.

13. On March 18, 2010, the Plaintiff was contacted by the Defendant's Human Resources Manager, David Olsen, and was told that Plaintiff needed to provide a physician's note releasing him to return to work on March 22, 2010. Plaintiff did obtain such a release which included reasonable restrictions that would provide Plaintiff with the ability to continue to receive treatment for his condition and reasonably limited his number of working hours to 60 per week. Plaintiff delivered the note to Olsen on March 19, 2010.

14. When Plaintiff returned to work on March 22, 2010, he was met by Defendant's HR Director, Olsen and the Managing Counsel of the Recoupment Department, Philip McGargill, at which time they requested that Plaintiff resign his employment. When Plaintiff complained that he was being treated unfairly due to his disability, he also brought up the alternative of other employment with the Defendant. Plaintiff was then sent home. Later that day, the Plaintiff was informed that Defendant was moving him from the Recoupment Department to the Claims Department.

15. On March 23, 2010, the Plaintiff was moved to the Defendant's Claims Department. The Plaintiff complained to the Defendant that reassignment was wrong and he should be allowed to return to his original position. Plaintiff was told by Defendant's HR Director, Olsen, that they had planned to terminate him when he returned to work on March 22, 2010, and that he should consider himself fortunate to still have a job.

16. Because Plaintiff knew he would have to take intermittent leave to attend continuing treatments for his condition, he requested on March 19th

that such doctor visits would be treated as intermittent FMLA leave. On March 24, 2010, Olsen informed Plaintiff that he was not eligible for FMLA.

17. On March 26, 2010, Plaintiff requested full FMLA leave for continuing treatment of his own disability, which had been aggravated by the actions of the Defendant, and also to care for his infant child.

18. On March 29, 2010, Plaintiff notified Defendant's HR Director, Olsen, that he would need accommodations for his disability. Olsen responded that Defendant would have to make a determination on the current request for FMLA leave before it would address his request for accommodations.

19. On April 5, 2010, Plaintiff received notice from Olsen that his second FMLA leave request was denied. Defendant also required certification of Plaintiff's disability and the age of his infant son.

20. On April 6, 2010, Plaintiff made his third request for FMLA leave with Olsen and also met with Owen Girard, Senior Vice President and Claims Center Manager, regarding accommodations for his disability. On April 8, 2010, Plaintiff was notified during a meeting with Olsen that he was being placed on FMLA leave for eight weeks beginning April 9, 2010. During the meeting, Plaintiff was also given a negative performance evaluation by Ray Abrams and Jennifer Reeves, Managing Counsels in the Claims Department. The negative evaluation again threatened the Plaintiff with termination based upon the two weeks he worked in the Claims Department.

21. On May 26, 2010, Plaintiff requested an additional four weeks of leave as allowed under the FMLA. On June 3, 2010, Plaintiff provided

Defendant with the clinical update by his treating physician which detailed the diagnosis of his condition. It was understood by both parties that the Plaintiff would then return to work on July 2, 2010.

22. On July 2, 2010, Plaintiff reported to work and provided to Olsen and the Human Resource Department a form completed by the Plaintiff's treating physician describing his disability and his need for accommodations. Olsen released Plaintiff from work pending resolution of an accommodation plan. On July 7, 2010, the Defendant was presented with a formal letter from Plaintiff's treating physician requesting reasonable accommodations.

23. On July 13, 2010, Defendant advised Plaintiff that he could return to the Recoupment Department, but the Defendant would not comply with the majority of the accommodations proposed by the Plaintiff's physician stating that said accommodations were unreasonable.

24. On July 14, 16, 26, August 3 and 17, the Plaintiff attempted to engage in good faith discussions with the Defendant in an interactive process to discuss accommodations. Those attempts were unsuccessful, and the Plaintiff was therefore not able to return to work for the Defendant.

25. Frustrated with the Defendant's unwillingness to engage in an interactive process to determine what types of accommodations would allow the Plaintiff to return to his previous position in the Recoupment Department, the Plaintiff initiated contact with the Nebraska Equal Opportunity Commission ("NEOC") on August 3, 2010. Plaintiff first met with the NEOC on August 23, 2010, and on September 30, 2010, Plaintiff filed a Charge of Discrimination

against the Defendant with the NEOC and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging violations under the NFEPA and Title I of the ADA.

26. On information and belief, Defendant signed for and received the NEOC Charge of Discrimination on or about October 12, 2010.

27. On or about October 19, 2010, the Plaintiff, through correspondence from a third party employee benefit provider dated October 18, 2010, learned that his employment had been terminated with Defendant, effective October 1, 2010. This form of termination notice came within days of when the Defendant became aware of Plaintiff's Charge of Discrimination, and as an adverse employment action, was a violation of the protections provided in the ADA, NFEPA, and the FMLA.

28. On or about December 22, 2010, Plaintiff filed an Amended Charge with the NEOC and EEOC further alleging that the Defendant had retaliated against him and terminated his employment after the filing of the September 30, 2010 Charge of Discrimination.

29. During the investigation by the NEOC, Plaintiff became aware while speaking with a former co-employee for Defendant that almost immediately after the Plaintiff took his leave from employment on December 31, 2009, that the co-employee had been made aware that the Plaintiff had to take medical leave from work due to a psychological breakdown. Disclosing such information could only have been made known to said co-employee through upper management for the Defendant because Plaintiff did not disclose any of

that information to anyone other than his wife, care providers, and to the Human Resources Department for the Defendant.

30. On October 28, 2011, Plaintiff amended his Charge of Discrimination with the NEOC and the EEOC on the basis that Defendant had breached the medical confidentiality protection found under the ADA.

31. The EEOC issued a Notice of Right to Sue on July 13, 2012 regarding Plaintiff's ADA discrimination claim, hereto attached as Exhibit "A". Exhibit "A" was received by the Plaintiff on or about July 15, 2012. The EEOC also issued on that same date the Notice of Right to Sue on the retaliation claim, Exhibit "B".

32. The Plaintiff has been diagnosed with a disability, and at all relevant times, he is a person with disabilities within the meaning of the ADA, 42 U.S.C. §§12102(2) and 12111(8) or was perceived by the Defendant as having a disability which substantially affects a major life activity within the meaning of the ADA. All records regarding the Plaintiff's medical condition require strict confidentiality under the provisions of ADA, 42 U.S.C. § 12112(d), 29 C.F.R § 1630.14(c)(1), and the FMLA, 29 C.F.R. 825.500(g).

33. Plaintiff began his employment with the Defendant in March of 2009. Prior to taking an approved leave for treatment of his disability, Plaintiff was not the subject of any disciplinary action in his employment. Plaintiff demonstrated, throughout his employment, the ability to successfully perform the essential functions of his position.

# COUNT I

## UNLAWFUL DISCRIMINATION IN VIOLATION OF THE ADA

34. Plaintiff incorporates herein, as if fully set forth, the allegations contained in paragraphs 1-33.

35. Upon Plaintiff's return to work on March 22, 2010, after being on disability leave, Defendant denied Plaintiff the opportunity to return to his previous position. Prior to his return from disability leave, Plaintiff had not been subject to any disciplinary action. After harassing the Plaintiff and asking him to resign, Defendant placed Plaintiff in a different position while limiting, segregating, and classifying him in a way that adversely affected his opportunities and status because of his disability.

36. The foregoing actions of the Defendant are in violation of the ADA, 42 U.S.C. § 12112 (a) et seq., as amended. The Defendant discriminated against the Plaintiff on the basis of his perceived disability by failing to allow the Plaintiff to return to his former position, harassing him, segregating him, and classifying him in a way that adversely affected his opportunities and status in violation of 42 U.S.C. § 12112(b)(1) and (b)(3)(A).

37. As the direct and proximate result of the Defendant's violations of the ADA, the Plaintiff has suffered lost wages and lost benefits in the amount to be determined by the court at the time of trial.

38. As a further direct and proximate result of the Defendant's violations of the ADA, Plaintiff has suffered undue hardship, great emotional distress, inconvenience, loss of enjoyment of life, and mental anguish.

## COUNT II

**FAILURE TO REASONABLY ACCOMMODATE IN VIOLATION OF THE ADA.**

39. Plaintiff incorporates herein, as if fully set forth, the allegations contained in paragraphs 1-38.

40. Plaintiff has, at all material times, been a qualified individual with a disability within the meaning of the intent of the ADA, 42 U.S.C. § 12111(8) that substantially affected a major life activity or was regarded as having a disability by Defendant, 42 U.S.C. § 12102(2)(C), yet Plaintiff was capable of performing the essential functions of his job when he attempted to return to his employment in July, August, and September of 2010.

41. The Plaintiff contacted Defendant on numerous occasions submitting information from his treating doctor setting forth the terms of reasonable medical accommodations, specifically on July 2, 2010, Defendant had a list of the accommodations which would reasonably allow Plaintiff to perform the functions of the job working within the Recoupment Department. The Defendant failed to enter into any type of good faith dialogue with the Plaintiff on how to work with said accommodations, and simply ignored the Plaintiff's numerous requests.

42. Denying the Plaintiff reasonable accommodations in his attempt to return to his previous position is a violation of the ADA, 42 U.S.C. § 12112(b)(5)(A) & (B). As such, the Defendant discriminated against the Plaintiff on the basis of his disability.

43. As the direct and proximate result of the Defendant's violations of the ADA, the Plaintiff has suffered lost wages and lost benefits in the amount to be determined by the court at the time of trial.

44. As a further direct and proximate result of the Defendant's violations of the ADA, Plaintiff has suffered undue hardship, great emotional distress, inconvenience, loss of enjoyment of life, and mental anguish.

## COUNT III

## RETALIATORY TERMINATION OF PLAINTIFF'S EMPLOYMENT IN VIOLATION OF THE ADA.

45. Plaintiff incorporates herein, as if fully set forth, the allegations contained in paragraphs 1-44.

46. On or about October 19, 2010, the Plaintiff, through correspondence from a third party employee benefit provider, learned that his employment had been terminated with Defendant, effective October 1, 2010. This form of termination notice came within days of when the Defendant became aware of Plaintiff's Charge of Discrimination.

47. The foregoing actions of the Defendant are in violation of the ADA prohibition against retaliation, 42 U.S.C. § 12203. The Defendant retaliated against the Plaintiff by threatening to terminate his employment when Plaintiff first attempted to exercise his rights under the ADA, and by terminating his employment after the time Plaintiff was forced to make and file his Charge of Discrimination with the NEOC and EEOC.

48. As the direct and proximate result of the Defendant's violations of the ADA, the Plaintiff has suffered lost wages and lost benefits in the amount to be determined by the court at the time of trial.

49. As a further direct and proximate result of the Defendant's violations of the ADA, Plaintiff has suffered undue hardship, great emotional distress, inconvenience, loss of enjoyment of life, and mental anguish.

## COUNT IV

## VIOLATION OF THE PLAINTIFF'S MEDICAL INFORMATION PRIVACY RIGHTS UNDER THE ADA AND FMLA.

50. Plaintiff incorporates herein, as if fully set forth, the allegations contained in paragraphs 1-49.

51. During the informal discovery process of the NEOC Charge of Discrimination investigation, the Plaintiff came into contact with a former co-employee. Through that contact the Plaintiff learned from the co-employee, that the co-employee and other peers of the Plaintiff, in December of 2009, became aware soon after the Plaintiff took medical leave on December 31, 2009, that the Plaintiff had left work because of a psychological breakdown. Other than the Plaintiff's immediate family members, his medical care provider, and the Human Resource Department for the Defendant, there would have been no other person aware of this medically confidential information regarding the Plaintiff. Therefore, it is reasonably believed that the information was improperly released from the Human Resource Department or those in upper

management on behalf of the Defendant in violation of the ADA 42 U.S.C. § 12112(d), 29 C.F.R § 1630.14(c)(1), and the FMLA, 29 C.F.R. 825.500(g).

52. As a direct and proximate result of the Defendant's violation of the medical records confidentiality under the provisions of the ADA and FMLA, the Plaintiff has suffered undue hardship, great emotional distress, inconvenience, loss of enjoyment of life, and mental anguish.

## COUNT V

## FAMILY MEDICAL LEAVE ACT VIOLATIONS

53. Plaintiff incorporates herein, as if fully set forth, the allegations contained in paragraphs 1-52.

54. In March and April of 2010, Plaintiff was required to make three written requests for FMLA leave over a three week time period before his rights to such leave were eventually recognized by Defendant. In the summer of 2010, the Plaintiff again was forced to make several inquiries to be allowed to return to his same position of employment, with reasonable accommodations, but the Defendant failed to participate in a good faith interactive process. Plaintiff was under the impression that the matter was still being considered by the Defendant up until the point in October of 2010 when he learned he had been dismissed.

55. Provisions under the FMLA provided that once the Plaintiff had been released by his medical care provider, the employer was obligated to return him back to his previous position or similar position with previous employee benefits.

56. Failure by the Defendant to return the Plaintiff in the summer of 2010 to his former position in the Recoupment Department and his eventual dismissal, identified as October 1, 2010, constitute violations of the FMLA and the employer's duty to return Plaintiff to his employment.

57. As a direct and proximate result of the Defendant's violations of the FMLA, the Plaintiff has suffered lost wages and lost benefits in the amount of be determined at time of trial, and as a result has also incurred attorney fees in order to pursue protection of said rights.

## COUNT VI

## NEBRASKA FAIR EMPLOYMENT PRACTICE ACT VIOLATION

58. Plaintiff incorporates herein, as if fully set forth, the allegations contained in paragraphs 1-57.

59. Pursuant to this court's jurisdiction under pendant jurisdiction, Plaintiff claims pursuant to the allegations set forth in paragraphs 1 through 57,that said conduct by the Defendant constitutes a violation of the NFEPA in that the Plaintiff is entitled to all types of remedies set forth under said Act.

## REQUEST FOR RELIEF

Wherefore, the Plaintiff, based on the foregoing allegations of fact and law, demands judgment against the Defendant as follows:

A. Declaring that the acts of the Defendant hereinbefore alleged, are all violations of the provisions of the ADA;

B. Declaring that the acts of the Defendant hereinbefore alleged, are all violations of the provisions of the FMLA;

C. Declaring that the acts of the Defendant hereinbefore alleged, are all violations of the NFEPA;

D. Awarding the Plaintiff with full back pay, front pay, and all related employment benefits the Plaintiff would have had had he not been discriminated against;

E. Awarding the Plaintiff general damages and specific damages in the amount to be determined at time of trial, and compensatory damages the amount to be determined at time of trial;

F. Award the Plaintiff punitive damages against the Defendant as provided for by the ADA;

G. Order that the Defendant, to institute and carry out policies, practice within programs that provide equal opportunities for qualified individuals with disabilities, and which eradicate the effects of past and present unlawful employment practices;

H. Award the Plaintiff his costs in this action, including reasonable attorney fees as provided by the ADA, FMLA and NFEPA;

I. Such other and further relief as the court may deem just and proper.

### REQUEST FOR JURY TRIAL

The Plaintiff hereby requests a Jury Trial of this matter to be held in Lincoln, Nebraska.

Dated this 8th day of August, 2012.

          Respectfully submitted,

          RYAN KNUTSON, Plaintiff,

          By: */s/ Douglas J. Peterson*
          DOUGLAS J. PETERSON #18146
          KEATING, O'GARA, NEDVED & PETER, P.C., L.L.O.
          530 S. 13th St., Suite 100
          Lincoln, NE 68508
          (402) 475-8230
          *Attorney for the Plaintiff*